MEMORANDUM

To: Governor's Office Legal Division
From: Donald Kersey, General Counsel, WVSOS
RE: West Virginia Ballot Access Requirements

---

### Introduction:

Candidates unaffiliated with a major recognized political party in West Virginia must follow the signature-gathering petition process set forth in W. Va. Code § 3-5-23 *et seq.* to be placed on a General Election ballot. With COVID-19 posing a threat to the public health, the in-person signature-gathering process places the general public's health at risk and creates a larger than typical burden on these candidates to satisfy the law under the circumstances.

Many states have relaxed similar signature-gathering processes, whether by executive action or court order. Consistent with the Governor's emergency authority set forth in W. Va. Code § 15-5-6(c)(7), relaxing the aforementioned regulatory statute may be in the best interest of the State for the 2020 General Election because strict compliance therewith will prevent, hinder or delay necessary action in coping with the emergency.

### Recommendation:

50% reduction in signatures required for all non-major party candidates seeking ballot access under the signature-gathering process set forth in W. Va. Code § 3-5-23. However, if upon review of the current West Virginia COVID-19 data your office deems the reduction unnecessary, our Office stands ready to communicate the decision and reasoning to inquiring candidates.

### Statutory Requirements Summary:

For a candidate unaffiliated with a major recognized party in West Virginia[1] to have his/her name placed on a General Election ballot, W. Va. Code §§ 3-5-23 and 3-5-24 require the following chronological steps:

1. Obtain permission ("official credentials") from the county clerk(s) to gather signatures in each county where the candidate seeks ballot access (for statewide candidates, all 55 counties must issue official credentials to the candidates).
2. The candidate or designee solicits signatures from registered voters in each jurisdiction.
3. The person soliciting signatures must "exhibit" the official credentials to each voter solicited.
4. The voter solicited must "be personally signed" by the voter "in their own proper handwriting."
5. The total amount of signatures required for ballot access is equal to 1% of the total votes cast for the office sought in the previous election.

---

[1] For the 2020 election cycle, the recognized major parties are Democratic, Libertarian, Mountain and Republican.


EXHIBIT A

6. Signature petition pages are provided to each county clerk to confirm the voters are (1) registered to vote in the county, and (2) the petition signatures match each voters' signature on file.
7. Upon confirming signatures are valid and the candidate satisfied the threshold signature amount requirement, each county moves forward with certifying the candidate's name for placement on the General Election ballot.

### Discussion:

Considering the risks to in-person interaction between candidates and the general public, the signature-gathering process presents a health risk to solicited voters. This process requires candidates and campaign workers/volunteers to solicit signatures door-to-door, at meetings/drives, and in public places.

During the COVID-19 pandemic, some candidates have chosen to "exhibit" the official credentials electronically, which requires the voters to print, sign "in their own proper handwriting," and to mail the signed signature petition back to the candidate. The term "exhibit" is undefined by this law, so our Office has blessed this electronic process for the purpose of distributing the official credentials to voters, who must print, sign, and mail or email the signed petitions back to the candidate.

Based on a survey of other states' responses to similar signature-gathering procedures amid the pandemic, several courts have held the fundamental right to ballot access and public safety outweigh current statutory signature requirements. There is a clear majority consensus among the various courts to relax or remove the signature-gathering process due to the risk to the public health for the 2020 election cycle.

Though few relevant cases have been adjudicated, the Sixth Circuit Court of Appeals is closely related to the current question in West Virginia. In *Esshaki v. Whitmner*[2], the court found, in part, that a 50% reduction in the minimum number of signatures required for ballot access was warranted because (1) the candidate would suffer irreparable harm to his 1st Amendment free speech and free association rights, and (2) the probability of harm to other and public interest weighed in favor of a preliminary injunction which reduces the signature threshold.

### Grounds for Executive Order:

The Attorney General's Office issued recent guidance regarding the Governor's broad authority to relax regulatory statutes during times of emergency.[3] Specifically, referring to the provisions of W. Va. Code § 15-5-6(c), the Attorney General's Office opined:

> [W]e also note that the Governor has separate and more extensive authority under a state of emergency. . . . Arguably, these provisions could support an order from the Governor regarding safe election procedures—potentially including personnel

---

[2] 2020 WL 1910154. E.D. Mich. Apr. 20, (2020).
[3] See W. Va. Atty. Gen. Op. March 18, 2020.

at polling places . . . if necessary to address the emergency that the coronavirus epidemic poses for the State.

State law explicitly authorizes the Governor's ability to suspend regulatory statues, stating further in W. Va. Code § 15-5-6(c):

> So long as a state of emergency or state of preparedness exists, the Governor has and may exercise the following additional emergency powers: ... (7) To suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders, rules of any state agency, if strict compliance therewith would in any way prevent, hinder or delay necessary action in coping with the emergency[.]

As we know, the Governor's emergency authority has already been exercised to delay the Primary Election date from May 12th to June 9, 2020. Analogizing to that action in reliance upon, in part, the above Attorney General Opinion, it is likely the Governor likewise has the authority to relax or remove the signature-gathering requirement for candidates seeking ballot access under the premises of (1) protecting the public health because no alternative exists to gain ballot access, and (2) uphold independent candidates' constitutional right to seek public office.

Inherent in the Governor's authority to suspend rules is the Governor's authority to provide for resumption of the same rules. Merriam Webster's dictionary defines "suspend" as "to set aside or make temporarily inoperative." As anything "temporary" may only persist for a limited time, and the Governor's authority is to suspend (not terminate) rules, the Governor inherently has the authority to allow for resumption of the suspended rules.

## State Survey of Modified Approaches

The nature of the COVID pandemic has left many states grappling with issues of first impression. This section summarizes several states' current positions, including modified approaches required by either executive or judicial order.

1. **Reduction of signature requirements**

   - **Connecticut** – Governor Ned Lamont issued an executive order reducing petition signature requirement for all candidates by 30 percent. He also extended the filing deadlines for major-party and unaffiliated candidates by two days, to June 11, 2020, and August 7, 2020, respectively.[4]

   - **Vermont** – Governor Phil Scott signed HB 681, eliminating all ballot-access petition requirements during 2020.[5]

---

[4] https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7LL.pdf

[5] https://legislature.vermont.gov/Documents/2020/Docs/ACTS/ACT092/ACT092%20As%20Enacted.pdf

- **Michigan** – Judge Terrence Berg (US DCT ED Michigan) issued an order reducing the petition signature requirements for primary candidates in Michigan to 50 percent of their statutory requirements. Berg also extended the filing deadline from April 21, 2020, to May 8, 2020, and directed election officials to develop procedures allowing for the collection and submission of electronic petition signatures.[6,7]

- **Virginia** – Judge W. Reilly Marchant issued an order reducing the petition signature requirement for Republican primary candidates for the United States Senate to 3,500. The statutory minimum was 10,000.[8]

- **New York** – Governor Andrew Cuomo issued an executive order reducing petition signature requirements by 30% for primary candidates and suspending the signature-gathering process effective March 17, 2020.[9]

- **Massachusetts** – The State Supreme Court issued an order reducing candidate petition signatures requirements to 50 percent of their statutory requirements. The court also authorized candidates to collect petition signatures electronically.

- **Utah** – By executive order of the Governor, the enforcement of ballot access requirements for the primary elections was suspended to the extent that it requires a candidate to create "signature packets."[10]

2. **Deadline extension for ballot-access signatures**

- **Alabama** – Governor Kay Ivey signed HB272 into law, extending the petition deadline for unaffiliated presidential candidates to August 20, 2020.[11]

- **Texas** – Secretary of State Ruth Ruggero Hughs determined that the petition deadline for independent candidates for non-presidential office would be extended to August 13, 2020.[12]

---

[6] http://ballot-access.org/wp-content/uploads/2020/04/gov.uscourts.mied_.346086.23.0.pdf
[7] https://www.mlive.com/public-interest/2020/05/signatures-required-to-run-for-some-offices-in-michigan-reduced.html?link_id=26&can_id=3ce03c3d77033bbeb4c4bf7ba04c984c&source=email-morning-digest-flipping-the-senate-is-within-reach-as-three-key-race-ratings-shift-toward-democrats&email_referrer=email_799676&email_subject=morning-digest-flipping-the-senate-is-within-reach-as-three-key-race-ratings-shift-toward-democrats

[8] https://www.virginiamercury.com/blog-va/richmond-judge-loosens-petition-signature-rules-for-gop-u-s-senate-primary-due-to-coronavirus/
[9] https://www.governor.ny.gov/news/amid-cobyvid-19-pandemic-governor-cuomo-signs-executive-order-temporarily-modifying-election
[10] https://rules.utah.gov/wp-content/uploads/Utah-Executive-Order-No.-2020-8.pdf
[11] https://legiscan.com/AL/text/HB272/2020
[12] http://ballot-access.org/2020/03/23/texas-secretary-of-state-says-non-presidential-independent-petition-deadline-will-be-august-13/

- **Nevada** – Court ordered extension of ballot access petition deadline for initiatives from June 24 to August 5.[13]

- **Ohio** – Ohio Courts declared that relaxing the signature gathering requirements for ballot access is was rational and necessary to prevent irreversible harm to candidates.

3. **Allowing for Electronic Submission of Signatures**

   - **Florida** – Secretary of State Laurel Lee signed two orders authorizing candidates to submit qualifying documents, including signed petitions, electronically.[14]

   - **New Jersey** – Governor Phil Murphy issued an executive order making the following changes to the state's election procedures: permitting candidates to collect petition signatures electronically and submit petitions online.[15]

   - **Georgia** – Secretary of State Brad Raffensperger extended the petitioning deadline for minor-party and unaffiliated candidates to August 14, 2020.[16]

   - **Massachusetts** – The State Supreme Court issued an order reducing candidate petition signatures requirements to 50 percent of their statutory requirements. The court also authorized candidates to collect petition signatures electronically.

4. **Other**

   - **Washington** – Governor Jay Inslee issued an executive order waiving the petition requirement for candidates who cannot afford to pay the filing fees associated with the offices being sought.[17]

---

[13] https://www.courtlistener.com/recap/gov.uscourts.nvd.143189/gov.uscourts.nvd.143189.44.0_1.pdf
[14] https://dos.myflorida.com/media/702873/1ser20-1.pdf; https://dos.myflorida.com/media/702874/1ser20-2.pdf
[15] https://nj.gov/governor/news/news/562020/approved/20200319a.shtml?fbclid=IwAR1BFK0CLRTDBqCmEzZwb3bFOmW4KpiQu2an7ZK8uKcXNw1AXotihidctJU
[16] http://ballot-access.org/2020/03/20/georgia-secretary-of-state-extends-petitioning-deadline-for-minor-party-and-independent-candidates/
[17] https://www.governor.wa.gov/sites/default/files/proclamations/20-53%20COVID-19%20Maintain%20Access%20to%20the%20Ballot%20%28tmp%29.pdf?utm_medium=email&utm_source=govdelivery

## Countervailing Concerns:

The public interest in allowing minor party candidates ballot access is balanced by several factors including overcrowding of ballots and difficulty of implementing new processes during an election and pandemic. Simply put, without some requirement beyond filing to run for office, but not requiring signatures and/or a filing fee (which fee offsets the county(ies) costs for holding the election), the public interest may be harmed.

Regarding the overcrowding of ballots, such can create a substantial nuisance. For example, in 2003, California had minimal ballot access requirements and attracted 135 candidates in a gubernatorial election.[18] The presence of a hundred, or even a dozen, candidates on a ballot can create confusion amongst the voting population. Secondary consequences of overcrowded ballots include: dilution of campaign funding reimbursement funds, difficulty satisfying the Commission on Presidential Debates' 15% threshold; and fears that a vote for a non-major party "spoiling" the election.

Regarding the difficulty of implementing new processes or systems in the middle of pandemic, such can result in catastrophic consequences. The City of San Jose, for example, is facing a $1 million recount cost to remedy alleged signature counting errors.[19]

## Conclusion:

The COVID-19 pandemic has created ballot access challenges for non-major party candidate in the 2020 General Election. In the public interest, some relaxation of existing petition requirements and their corresponding signature collection procedures may be necessary. Based on the vast majority of recent court decisions, the trend suggests that a legal challenge to West Virginia's current signature-gathering process under the COVID-19 pandemic would likely be successful. Acting now will reduce last-minute process changes at the county level, sooner remove the public health risks posed by candidates currently gathering signatures, and protect candidates' fundamental right to ballot access amid the current State of Emergency.

In contra, all aforementioned court decisions were entered in the previous months. With the current state of West Virginia's COVID-19 infection rate, the facts may have changed sufficiently to, at least, warrant a review of the court decisions and apply the analyses to the State's situation.

Indeed, a reduction by 50% of the number of signatures required for a minor party candidate to gain ballot access is: (1) an equitable way to balance candidates' ballot access with the public interest of not having a confusing and overcrowded ballot, and (2) the least-disruptive alternative to WV's signature-gathering requirements.

However, if upon review the current facts are distinguishable from those present in the previous months, our Office stands ready to communicate to the candidates your ultimate decision and reasoning.

---

[18] https://en.wikipedia.org/wiki/California_gubernatorial_recall_election
[19] https://sanjosespotlight.com/san-jose-battle-over-fair-elections-initiative-goes-to-court-but-who-will-pay/